FILED'09 JUL 30 13:55 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA E. CHAPMAN,                              CV. 08-409 CL

                    Plaintiff,                   FINDINGS AND
                                                 RECOMMENDATION

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.


CLARKE, Magistrate Judge:

## INTRODUCTION

Plaintiff Barbara E. Chapman ("Chapman"), brings this action pursuant to the Social

Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her claim for Disability

Insurance Benefits. For the reasons set forth below, the decision of the Commissioner should be

reversed.


1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Chapman filed an application for Supplemental Security Income benefits on May 14, 2004, alleging disability since December 6, 2003, due to pain in her right arm, right elbow, right ankle, left hip, lower back, and a heart condition. Tr. 72. Her application was denied initially and upon reconsideration. On January 10, 2007, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated April 17, 2007, the ALJ found Chapman was not entitled to benefits. On February 25, 2008, the Appeals Council denied Chapman's request for review.

The ALJ's decision is the final decision of the Commissioner pursuant to 20 CFR §§ 404.981, 422.210. Chapman now seeks judicial review of the Commissioner's decision.

## FACTUAL BACKGROUND

Born in 1952, Chapman was 51 years old on her alleged onset date. She completed the twelfth grade. Chapman worked in fast food, as a telephone operator, and as a toll collector. The medical records accurately set forth Chapman's medical history as it relates to her claim for benefits. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details of those records will not be recounted here.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996).

2  - FINDINGS AND RECOMMENDATION

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 404.1520. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR § 404.1520(b).

3 - FINDINGS AND RECOMMENDATION

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under step three. 20 CFR § 404.1520(c).

Step Three. Because disability cannot be based solely on a severe impairment, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner proceeds to step four. 20 CFR § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner proceeds to step five. 20 CFR § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR § 404.1520(f)(1).

4 - FINDINGS AND RECOMMENDATION

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Chapman had not engaged in substantial gainful activity since the alleged onset of disability on December 6, 2003. This finding is not in dispute.

At step two, the ALJ found Chapman had the medically determinable severe impairments of diabetes, chronic obstructive pulmonary disease ("COPD"), lower extremity edema, osteoarthritis, and obesity. Tr. 22-23. This finding is in dispute.

At step three, the ALJ found that Chapman's impairments did not meet or equal in severity one listed in the regulations. This finding is not in dispute.

At step four, the ALJ determined that Chapman retained the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, that she needed the opportunity to sit or stand, and that she not be required to ambulate over uneven ground. The ALJ found that Chapman should not be required to use ladders, ropes or scaffolds, and can only occasionally crawl, stoop, bend, or climb. She may only occasionally engage in overhead reaching. The ALJ found that Chapman should have no concentrated exposure to fumes, gases, or dust. Tr. 24. The ALJ concluded that Chapman was not able to perform her prior relevant work.

At step five, the ALJ found that Chapman retained the capacity to perform a limited range of light work, including as an information clerk and a booth cashier/ticket seller. As a result, the ALJ found Chapman not disabled within the meaning of the Act.

/ / /

5 - FINDINGS AND RECOMMENDATION

## DISCUSSION

Chapman contends that the ALJ erred by: (1) finding mental health and cardiac impairments to be non-severe; (2) improperly rejecting the opinion of examining physician Robert Irwin, M.D.; (3) failing to give proper weight to the opinion of treating physician's assistant Barbara Martin, PA-C; (4) finding her not fully credible; and (5) finding that she had transferable skills. For the reasons set out below, the court need not address the last two assertions.

## I. Step Two Legal Standards

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28) Any error by an ALJ in failing to identify an

impairment as severe at step 2 is harmless if the ALJ considers any limitations imposed by the impairment at step 4 of the analysis. *Lewis v. Astrue,* 498 F3d 909, 910 (9th Cir 2007).

A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

A. Mental Impairments

Chapman was evaluated by Caleb Burns, Ph.D., on September 27, 2004. Tr. 346-61. Dr. Burns administered a number of standardized psychological tests. On the WAIS-III, Chapman scored in the borderline range of intellectual ability. Her Full Scale IQ of 77 placed her in the 6th percentile compared with same-age peers. Dr. Burns noted that the scores "indicate some cognitive defects, but these are not severe." Tr. 357. Overall memory was an "area of very great strength," and her Trail Making Part A and B scores placed her at roughly the 60th percentile and the 75th percentile as compared to same age peers, indicating "no significant neuropsychological deficits." Tr. 358.

The Minnesota Multiphasic Personality Inventory-2 profile was invalid because Chapman "greatly over-endorsed severe psychiatric problems." Tr. 359. Dr. Burns concluded that Chapman "appears to be suffering from an adjustment disorder with depressed mood." *Id.* Dr. Burns stated that "the major impediments for employment for Ms. Chapman at this time are related to her pain and medical problems." Tr. 360. Dr. Burns stated that while Chapman's "depression and cognitive deficits impact negatively on her employment status, they by themselves are not seen to necessarily preclude employment...especially if her depression can be

treated effectively with medication and/or counseling." *Id.* Dr. Burns assessed a Global Assessment of Functioning ("GAF")[1] score of 58.

The ALJ impermissibly attributed Dr. Burns's GAF score assessment to limitations arising from non-mental impairments. However, the ALJ correctly noted that the GAF score is contradicted by Dr. Burns's conclusion that Chapman's mental impairments were "not severe" and were not a "major impediment" to employment. The ALJ's conclusion that Chapman's mental impairments were not severe is supported by substantial evidence. To the extent that the ALJ rejected Dr. Burns's opinion, that rejection was based on specific and legitimate reasons.

Chapman speculates that her depression could have more than a minimal effect on the basic work activities of concentrating, maintaining a schedule, and interacting with the public, and that it is therefore severe. There is no evidence to support these assertions, and the test results, as noted above, indicate that she "greatly over-endorsed" her mental limitations. Tr. 359.

B. Cardiac Impairment

The ALJ found there was no objective evidence to support Chapman's allegation of heart problems, and stated that the treating practitioner, Barbara Martin, PAC, had not reported any cardiac impairment. Tr. 26.

---

[1]    The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. *Id* at 34. A Global Assessment of Functioning ("GAF") score between 51 and 60 indicates "Moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., no friends, unable to keep a job).

However, the ALJ failed to consider an October 2004 cardiac perfusion scan revealing evidence of ischemia, a January 2005 chest x-ray indicating mild congestive heart failure, a March 2006 abnormal electrocardiogram, and a March 2006 chest x-ray showing cardiomegaly, vascular congestion, and some degree of congestive failure. Tr. 397, 330, 224, 227. There is no evidence as to what, if any, limitations resulted from these conditions.

Plaintiff contends that cardiac impairments can cause shortness of breath, and that she complained of that symptom. Plaintiff argues that shortness of breath would have more than a minimal effect on Chapman's ability to walk, lift, and carry. But the limitations arising from this symptom are adequately addressed by the ALJ's finding that plaintiff suffered from COPD. Any error the ALJ made by failing to identify Chapman's cardiac impairments as "severe" at step two was harmless.

## II. The Opinion of Examining Physician Robert Irwin, M.D.

Robert Irwin, M.D., examined Chapman for 35 minutes on August 24, 2004. Tr. 151-57. Her chief complaints were pain in her back, legs, left hip, elbow, and chest. Dr. Irwin reviewed medical records consisting of an incomplete emergency room note dated June 16, 2004, and two handwritten chiropractic clinic notes dated July 14, 2004 and June 30, 2004.

Chapman reported that her back pain began gradually in January 2004, and that chiropractic treatment had made it worse. She told Dr. Irwin that previous medical examiners told her she had a decreased deep tendon reflex in the left leg, but that MRI and x-rays found nothing.

Chapman's leg pain began in April 2004. She was evaluated in the emergency room for edema, and advised to elevate her legs. Her left hip began hurting in April 2004, with increased

9 - FINDINGS AND RECOMMENDATION

pain when walking. Chapman's right elbow was injured in a fall in December 2003. She was advised to wear a sling for a period of time, but had not returned for further treatment, despite continued pain.

Chapman reported that she had had intermittent chest pain for about two years, and had been hospitalized on three occasions for "stress heart attacks." Tr. 152. She had been advised that these were stress related and not the result of any cardiac deficiency.

At the time of the examination, Chapman lived alone and performed all of her household chores, though she reported holding onto something during many activities. She could lift a gallon of milk with either hand and carry grocery bags, though her right arm was limited because of elbow pain. Chapman reported that she could walk one to two blocks because of leg pain and shortness of breath, and that she was on her feet about eight hours during the day, but for no more than 20-30 minutes at a time. She could sit for about six hours a day, but for no more than about 30 minutes at a time.

Dr. Irwin noted that Chapman appeared somewhat depressed, that her history was "notably vague," and that there "appears to be some pain behavior present." Tr. 153. He found her back tender to palpation in the thoracic, lumbosacral, and sacroiliac regions. Her left hip was painful on manipulation. Motor strength appeared to be 5/5 in the upper extremities, though it "is not clear if the claimant was giving full effort." Tr. 155. Chapman was able to manipulate large and small objects well, though notably slowly.

Dr. Irwin recorded a history of lower back pain, described as chronic, but "regarding radiation she is vague when providing details." *Id.* As to Chapman's history of leg edema, it was not observed. Chapman appeared to have pain in both hips, but Dr. Irwin could not exclude

10  - FINDINGS AND RECOMMENDATION

potential etiologies, noting that no imaging studies were available. As to her right elbow, Dr.

Irwin found it "not clear why she is still having discomfort," noting mild tenderness but a lack of

imaging studies. Similarly, Chapman's chest pain was produced by palpation over the sternum,

but no imaging or other medical records were available. Finally, Chapman related "some

nocturnal wheezing," and Dr. Irwin noted that she continued to smoke cigarettes and that no

pulmonary function tests, x-rays, or oxymetry were available.

Dr. Irwin concluded:

> **FUNCTIONAL ASSESSMENT:** Based on the brief evaluation
> above, I might expect that the claimant might be able to be up on
> her feet, standing and walking, for less than two hours in the course
> of a day. The underlying etiology, however, is not clear at this
> time. She still needs further evaluation. She indicated that she was
> last well around two years ago, but she was too vague on the his-
> tory to get clear details and few medical records are currently avail-
> able. There is mostly some potential inconsistency noted in the
> examination.
>
> I might expect that she might be able to sit upwards of six hours per
> day with frequent breaks.
>
> Currently, an assistive device appears to be medical [sic] necessary
> since she appears to have some difficulty with balance, as well as
> her complaints of pain with ambulation.
>
> She might be expected to lift or carry perhaps between 10-15 pounds
> on an occasional basis and perhaps 10 pounds on a more frequent
> basis.
>
> Posturally, she should avoid activities such as bending, stooping, or
> crouching related to her lower back pain and left hip pain.
>
> She appears to be able to reach, handle, feel, and grasp, but does
> this somewhat slowly and her grip on the right hand is slightly di-
> minished over the left, but the etiology of this is still not clear at
> this time. Further time and testing would be needed for a definitive
> diagnosis, which also may further clarify issues regarding her func-

tional assessment.

Tr. 156-57.

An ALJ may reject the uncontroverted opinion of an examining physician only for "clear and convincing reasons." *Magallanes v. Bowen,* 881 F2d 747, 751 (9th Cir 1989). If the physician's opinion is controverted, the ALJ must articulate "specific, legitimate reasons" to reject it. *Id.* The ALJ may provide specific, legitimate reasons for rejecting controverted medical opinions by summarizing the conflicting evidence in detail.

The ALJ gave "less than full weight" to Dr. Irwin's opinion. Tr. 27. The ALJ stated:

> I have also considered and given less than full weight to the August 2004 opinion of Dr. Irwin that the claimant was limited to no more than sedentary work with lifting up to 15 pounds occasionally and avoidance of bending, stooping, or crouching. He also opined that an assistive device was medically necessary based on her complaints of pain with ambulation and her physical examination which revealed difficulty with balance. [Citation omitted.] However, Dr. Irwin examined the claimant on only one occasion and although he reported the claimant demonstrated some decreased grip strength on the right and limited plantar flexion, he was unsure if she were putting forth full effort [citation omitted]. Dr. Irwin's assessment regarding the claimant's functional abilities was made without the benefit of imaging studies and while he opined that the claimant's ability to stand and walk was limited to less than two hours in the course of a day, he acknowledged that the underlying etiology of that limitation was unclear [citation omitted]. This suggests he relied primarily on the subjective reports of the claimant in reporting his opinion regarding her abilities. Updated medical records reveal few abnormalities to support the claimant's subjective complaints as discussed above. Accordingly, I have concluded the claimant is not as limited as Dr. Irwin's restrictions suggest.

*Id.*

12  - FINDINGS AND RECOMMENDATION

Chapman concedes that the nature and length of the physician-claimant relationship is a permissible factor for the ALJ to consider in weighing physician opinion evidence, citing 20 CFR § 494.927(d)(1). She argues that the ALJ erred by rejecting Dr. Irwin's opinion, in part, based on the brevity of the relationship because Dr. Irwin conducted a comprehensive examination that revealed clinical signs consistent with her impairments.[2] Partial confirmation of Dr. Irwin's clinical findings by subsequent medical providers may provide a reason for the ALJ to credit Dr. Irwin's opinion. Such confirmation does not make it an error for the ALJ to cite the brevity of the physician/patient relationship as a reason to discount the doctor's opinion.

Chapman argues that the ALJ erred in discrediting Dr. Irwin's opinion because Dr. Irwin questioned whether Chapman was putting forth full effort. Chapman contends that a full reading of Dr. Irwin's opinion "suggests that Dr. Irwin was unconvinced there was any true inconsistency and that, further, his opinion accounted for any potential inconsistency." Plaintiff's Opening Brief, at 9. To the contrary, Dr. Irwin's opinion is most fairly read as quite tentative. The ALJ did not err in discounting Dr. Irwin, in part, because Dr. Irwin himself questioned whether the patient was making her best effort. The ALJ's determination to give Dr. Irwin's opinion limited weight is supported by clear and convincing reasons.

### III. The Opinion of Treating Physician's Assistant Barbara Martin, PA-C

The ALJ gave "significant weight" to the opinion of treating physician's assistant Barbara Martin, PA-C, that Chapman would need to be able to "sit or move around at will" and would "require an environment free of irritants such as fumes, dust and gases," but gave "less weight" to Martin's opinion that Chapman could only lift ten pounds or less, could not stoop, crouch,

---

[2]Counsel cites Tr. 253-55, though apparently intending to cite Tr. 153-55.

13  - FINDINGS AND RECOMMENDATION

crawl, or climb, and "little weight" to the opinion that Chapman "has any limitation in the use of her upper extremities for tasks involving gross manipulation." Tr. 28.

The ALJ gave little weight to Martin's statement that Chapman was "fairly significantly disabled," because "it is inconsistent with her treatment records which suggest the claimant does not always use her cane and which contain recommendations that the claimant exercise [citation omitted]. *Id.* Finally, the ALJ rejected Martin's opinion that Chapman would likely miss more than two days of work each month "due to symptom exacerbation and resulting medical appointments." Tr. 399.

The Code of Federal Regulations distinguishes between opinions from "acceptable medical sources" and those from "other sources." 20 CFR §§ 404.1513(a) and (e), 416.913(a) and (e). The regulations set out guidelines for the Commissioner to follow when weighing conflicting medical opinions from acceptable medical sources. As a physicians' assistant, Martin's opinion is an "other" medical source opinion.

However, chart notes indicate that Martin worked closely with, and under the supervision of, Gary Olbrich, M.D. (Tr. 275, 278, 280), Wendy Callander, M.D. (Tr. 282, 283, 286), and Martin Donohoe, M.D., F.A.C.P. (Tr. 287, 289, 290, 292, 295). Martin was acting as an agent of Drs. Olbrich, Callander, and Donohoe in her relationship with Chapman. Accordingly, her opinion should properly be considered as part of the opinions of the doctors, an acceptable medical source. *Gomez v. Chater,* 74 F3d 967, 971 (9th Cir 1996). The ALJ should weigh Martin's opinion using the same factors as for acceptable medical sources, including, for example, the length and frequency of the relationship, the consistency of the opinion with other medical evidence, and any other factors that tend to support or refute the opinion.

14  - FINDINGS AND RECOMMENDATION

The ALJ rejected Martin's opinion, in part, because he found it to be based "in large part on the claimant's subjective reports of pain and I have found the claimant to be less than fully credible in that regard[.]" Tr. 28. However, Martin had treated Chapman for almost two years when she wrote her January 2007 opinion. Martin referred Chapman to a cardiologist, urologist, and bone and joint specialist, and was copied with their reports and test results. Martin specifically stated that she had seen "no indication" that Chapman was malingering or exaggerating her symptoms. Tr. 126. The ALJ's assertion that he discounted Martin's opinion because it was based on Chapman's subjective reports is not clear and convincing and not supported by substantial evidence.

The ALJ rejected Martin's opinion that Chapman was limited in the use of her upper extremities for tasks involving gross manipulation because "the record contains no objective evidence of the inability to use her hands effectively." Tr. 28. However, the record does contain objective evidence of Chapman's right shoulder impairment in the form of an x-ray showing degenerative joint disease and narrowing of the acromioclavicular joint. Tr. 334. As this impairment could logically result in a limitation of the ability to manipulate with the hands, the ALJ erred in rejecting Martin's opinion.

The ALJ rejected Martin's opinion that Chapman "would likely miss more than two days of work per month because of medical appointments" because her treatment records "generally document routine care rather than treatment for acute exacerbations of the claimant's conditions." Tr. 28. But Martin stated that Chapman would miss more than two days of work per month from any full-time job "due to symptom exacerbation and resulting medical

appointments." Tr. 399.  The ALJ erred in rejecting Martin's assessment of symptom

exacerbation.

The ALJ rejected Martin's opinion that Chapman's diabetes medication can cause

weakness and dizziness, and her pain medication can cause fatigue and confusion, because

Chapman had not reported any such side effects.  Tr. 28.  That Chapman had not experienced or

reported those side effects does not mean that they were not possible, and the ALJ erred in

rejecting Martin's opinion on the subject.

The ALJ noted Martin's opinion that an assistive device "is medically indicated."  Tr. 23,

125.  He did not expressly reject this opinion, but failed to include this limitation in his residual

functional capacity assessment.  This was error.  *Smolen v. Chater,* 80 F3d 1273 (9th Cir 1996).

Even if Martin's opinion is not entitled to the weight of an acceptable medical source, her

opinions as to Chapman's symptoms must be considered unless the ALJ "expressly determines to

disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v.*

*Apfel,* 236 F3d 503, 511 (9th Cir 2001).  The ALJ did not articulate any valid reason to disregard

Martin's opinion.

## IV.  Remand For Payment of Benefits is Appropriate

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir),

*cert. denied,* 531 US 1038 (2000).  The court's decision turns on the utility of further

proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be

served by further administrative proceedings or when the record has been fully developed and the

evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d

759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should

be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F3d at 1178.

The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues
> that must be resolved before a determination of disability can
> be made, and (3) it is clear from the record that the ALJ would
> be required to find the claimant disabled were such evidence
> credited. *Id.*

The second and third prongs of the test often merge into a single question: Whether the

ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at

1178 n.2.

The court has determined that the ALJ improperly rejected Martin's opinion as to

Chapman's limitations. If credited, Martin 's opinion establishes that Chapman cannot work on a

regular and sustained full-time basis and, therefore, she is disabled. *See Schneider v. Comm'r,*

223 F3d 968 (9th Cir 2000). *See also Reddick v. Chater,* 157 F3d 715, 729 (9th Cir 1998) ("We

do not remand this case for further proceedings because it is clear from the administrative record

that Claimant is entitled to benefits.")

However, the medical evidence is not definite concerning the onset date of disability.

Social Security Ruling 83-20 requires the ALJ to call a medical expert to aide in determining the

date of onset. *Armstrong v. Commissioner of Social Sec. Admin.,* 160 F3d 587, 590 (9th Cir

1998).

17  - FINDINGS AND RECOMMENDATION

## **RECOMMENDATION**

For the reasons set forth above, this matter should be remanded for the purpose of permitting the Commissioner to determine the onset date of disability and to calculate and to award benefits to plaintiff.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 17, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 30 day of July, 2009.

MARK D. CLARKE
United States Magistrate Judge

18  - FINDINGS AND RECOMMENDATION